452 P.2d 498

**STATE of Arizona, Appellee,**

v.

**Nathaniel FRANKLIN, Appellant.**

**No. 1691.**

Supreme Court of Arizona.

In Banc.

April 3, 1969.

Gary K. Nelson, Atty. Gen., Darrell F. Smith, former Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ozell M. Trask, Phoenix, for appellant.

HAYS, Justice.

The defendant, Nathaniel Franklin, was convicted of the robbery of the Diamond E. Market in Phoenix, Arizona. The testimony adduced at trial as it relates to the questions raised on appeal indicates that he was arrested by two uniformed police officers. The officers gave chase after being informed by a woman that the suspect then running by had robbed a market.

One of the officers found the defendant crouched in a shed with a pistol in his hand. The officer saw him take a stocking cap from his head and throw it to the ground. Besides the pistol the officer took some bullets and three hundred six dollars cash from the person of the defendant. At the time of the arrest the defendant made certain inculpatory utterances.

This matter was previously up on appeal and after the court-appointed counsel indicated that he could find no reversible error, the court examined the record for fundamental error and affirmed.

Thereafter the defendant filed a Writ of Habeas Corpus and we vacated our previous decision, 101 Ariz. 89, 416 P.2d 413, appointed counsel, and permitted the appeal to proceed.

The following points have been raised on this appeal: (1) was the arrest of the defendant lawful? (2) If the arrest was unlawful, should the evidence seized by the arresting officers be excluded as evidence in the trial? (3) Should the statements of the defendant at the time of his arrest which were made prior to his being informed of his rights be excluded?

■ On the first point we hold that there was probable cause and the arrest was legal. Counsel in his excellent brief has cited cases on informers and arrests stemming from their information. Although a person unknown at the time to the police officers gave the original information which triggered the arrest, the surrounding circumstances and events up

to the time of arrest combined to provide probable cause.

The U. S. Supreme Court in Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) quoted the following:

" 'In dealing with probable cause, * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, supra, 338 U.S. 160, at page 175, 69 S.Ct. 1302, at page 1310, 93 L.Ed. 1879. Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 45 S.Ct. 280, 69 L.Ed. 543."

We are not impressed with the argument which says that in the classic nursery rhyme situation of "John, John, the Piper's son, stole a pig and away he run," that the police officers, who saw John run by with the squealing pig and a bystander hollering "stop thief," have to find the pig's owner and establish the theft before they can give chase.

In holding that the arrest was lawful we have disposed of the second point raised. We shall now consider the final point regarding the utterances of the defendant made at the time of his arrest. The following testimony of the arresting officer is pertinent:

Reporter's Transcript, page 17.

"Mr. Wamacks: Q. At the point you say you told him he was under arrest, to drop the gun and come out, did the defendant say anything at this time?

A. Yes, after throwing the gun down, he said, 'Go ahead and burn me, go ahead and burn me.'

Mr. O'Mara: I didn't hear you.

A. After throwing the gun down he said, 'Go ahead and burn me, go ahead and burn me,' and after repeating this, made the statement, 'for a lousy fifteen minutes it is going to cost me years. All I wanted was some money.' And he went on to say that he went into the market to use the restroom, and he saw the money and he couldn't resist taking it, and he needed it for his family.

Q. Now, at any time before or during the time he made these statements you have just testified to, did you attempt to question him in any way or ask him any questions?

A. No."

* * * * * *

Reporter's Transcript, page 24:

"Q. And you didn't advise him at that time he didn't have to make any statement to you whatsoever, did you?

A. I didn't have a chance to. He kept talking."

The obvious outburst of the defendant does not fall within the prohibitions of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The testimony shows that no questions were asked by the officer at the time of the arrest nor was he afforded an opportunity to give Miranda warnings prior to the defendant's utterances. Having held the arrest to be lawful, we find no error in admitting the statements of the defendant.

Judgment is affirmed.

UDALL, C. J., LOCKWOOD, V. C. J., and STRUCKMEYER and McFARLAND, JJ., concur.